HEARD NOVEMBER TERM, 1879.

CASE No. 709.

JOHN H. HAMER AND ROBERT M. HAMER, BY HIS GUARDIAN
AD LITEM, v. EDWIN A. BETHEA, J. F. BETHEA, AND D. W
BETHEA.

1. Under proceedings in partition the lands were assigned to A, who was
charged with the payment of half their assessed value to the distributees of
B, who at his death intestate was a joint tenant with A. *Held*, that a pay-
ment of this amount to the administrators of B was not a satisfaction of
the decree.
2. So far as administrators are concerned, the character of property, whether
real or personal, is that which it bears at the death of the intestate, and is
unaffected by any subsequent conversion.
3. An order for the disposition of the proceeds of land "hereafter directed
to be sold," cannot embrace the proceeds of other lands of the same party
sold under a previous order of the court, passed in another cause, at the
same term.

Before TOWNSEND, J., at Marion, March Term, 1876.

In this case Honorable William H. Wallace, judge of the
seventh circuit, sat in the place of Associate Justice McIver, who
had been one of the counsel in the cause in the court below.

The Circuit decree very fully states all the facts of the case.
The order of Chancellor Dunkin passed February 20th, 1860,
in the case of *Fladger et ux.* v. *Hamer et ux.*, (mentioned in the
Circuit decree and also in the opinion of this court,) so far as it
affects the present issues, is as follows :

The commissioners to whom a writ of partition was directed
in this case, requiring them to make partition of the property
named in the pleadings, having made their return to the writ, it
is, on motion of Harllee & Graham, complainants' solicitors,
ordered that the said return and recommendations be confirmed,
except as to vesting the share of Missouri, wife of John H.
Hamer, the defendant, in the said Missouri. And it is ordered,
in respect to the portion of negroes allotted to the said Missouri,
and the proceeds of land, hereafter directed to be sold, that it be-

referred to the commissioners of this court to inquire and report as to who would be a fit and proper trustee on whom to settle said slaves and proceeds of sales of land to the use of the said Missouri ; the terms of such settlement and the amount of bond to be given by said trustee.

The Circuit decree is as follows :

William S. Bethea died intestate on the        day of March, 1857, leaving his widow, Sarah A. Bethea, and two children, Missouri Bethea and William H. Bethea, as his only heirs-at-law. Sarah A. Bethea administered upon his personal estate, and subsequently intermarried with C. J. Fladger, who, by reason of the marriage, became administrator with her ; Missouri Hamer intermarried with John H. Hamer, after the death of her father, and died intestate on the        day of      , 1862, leaving an infant son, Robert M. Hamer, and her husband as her only heirs-at-law.

The intestate, William S. Bethea, in his lifetime, was joint owner with John C. Bethea of several tracts of land lying in Marion county, then district. On the 14th day of February, 1859, after the death of W. S. Bethea, a bill of complaint was filed in the Court of Equity, for the partition of said lands, by John C. Bethea, against the heirs-at-law of intestate before named. The cause was heard on the 18th of February, 1859, and the court, after directing certain conveyances to be made to perfect the titles, &c., of the joint tenants, and the payment of a certain sum of money by the administratrix of W. S. Bethea, ordered a writ of partition to issue to divide the said lands between John C. Bethea and the heirs-at-law of W. S. Bethea. In December, 1859, the writ accordingly issued, and the commissioners therein named, and to whom it was directed, made their return to the Court of Equity in February, 1860, in which they valued all the lands at the sum, in the aggregate, of $5151, and recommended that the lands be set apart to John C. Bethea at that sum, who was to pay to the heirs-at-law of W. S. Bethea the one-half of said amount by the 1st day of January, 1861, with interest from the 1st day of March, 1860. The return was confirmed by an order of the court on the 17th day of February, 1860. John C.

2 D

Bethea went into possession of the three tracts of land so set apart to him, and continued in possession up to the time of his death in January, 1863. By the terms of his will, of which R. B. Fladger was one of the executors and duly qualified, his son, Edwin A. Bethea, as devisee, went into possession of the said lands, and is now in possession of them, with the exception of the "Clark" tract, which was conveyed by him to John F. Bethea in 1869, and a portion of which was sold by John F. Bethea to D. W. Bethea.

The complaint in this action alleges that neither J. C. Bethea, in his lifetime, nor his executor, after his death, nor his son and devisee, nor J. F. Bethea or D. W. Bethea, as pretended owners of the "Clark" tract, ever paid to Missouri Hamer or her legal representatives, or to any other person authorized to receive the same, her share of the money assessed and decreed to be paid to her by John C. Bethea.

That at the time of her death, Missouri Hamer was a minor and owed no debts, and there has been no administration upon her personal estate; that there is now due and owing to the plaintiffs, as heirs-at-law of Missouri Hamer, on account of her interest in the said lands, the sum of $1697.39, with interest from the 26th of May, 1873, being the one-third of the amount, with interest, as assessed to be paid by J. C. Bethea; and they are informed that a statutory mortgage or lien exists upon the lands for the payment of her share, and that the title of Edwin A. Bethea, J. F. Bethea and D. W. Bethea will not vest in the same until the said amount of money is paid to her, even if the other heirs-at-law of J. C. Bethea have been paid.

The prayer of the complaint is for the foreclosure of the statutory mortgage, and for a sale of the said lands for the purpose of subjecting them to the payment of the amount due the plaintiffs.

The defendants, in their answer, after admitting most of the allegations of the complaint, deny the fact stated, that the share of Missouri Hamer was never paid to her or her heirs by them or any of them. For further answer they allege that on the 17th day of December, 1859, C. J. Fladger and wife, administrators of W. S. Bethea, filed their bill against John H. Hamer and wife and others, for partition and account, and that at the

February Term of the Court of Equity, in 1860, it was ordered, among other things, "that the said return be confirmed, with its recommendations, except as to the vesting of the share of Missouri Hamer, wife of John H. Hamer, the defendant, in the said Missouri. And it is ordered, in respect to the portion of the negroes allotted to the said Missouri, and the proceeds of the land. hereafter directed to be sold, that it be referred to the commissioner of the court to inquire and report as to who would be a fit and proper trustee on whom to settle said slaves and proceeds of sales of land to the use of the said Missouri, the terms of said settlement and the amount of the bond to be given by the trustee. It is further ordered that the share of the negroes and proceeds of sale of land allotted to Missouri, wife of John H. Hamer, remain in the administrator's hands until the further order of this court."

They further allege that the above order was made at the same term of the court, by the same Chancellor, and on the same day that the order referred to and granted in the complaint was made.

They further allege that the money ordered to be paid by J. C. Bethea was a part of W. S. Bethea's estate, and as such was covered by the order of the court settling Missouri's portion upon a trustee.

The defendants further allege that John C. Bethea, in his lifetime, paid the money ordered to be paid to the distributees of W. S. Bethea to C. J. Fladger, the administrator of W. S. Bethea, and that said Fladger, as administrator, has accounted for the same. The defendants insist that said payment was a good payment, and a complete discharge of the statutory lien upon the lands, and plead said payment in bar of the plaintiffs' action for foreclosure. The evidence of the payment of the money by J. C. Bethea to the administrators of W. S. Bethea is a receipt, as follows:

"Received 26th August, 1861, of John C. Bethea, two thousand six hundred and sixteen 75-100 dollars, as above stated, which is in full of the portion of the estate of W. S. Bethea in the lands which were assigned the said John C. Bethea in partition under proceedings in the case above stated had in the Court of Equity for Marion District."

Decree.

The title of the case in which the lands were assigned to J. C. Bethea appears above the receipt. The paper is in the handwriting of C. D. Evans, the then commissioner in equity for Marion district.

At the hearing of the case there was oral and record testimony offered. The records and all the papers in the cases of *J. C. Bethea* v. *Sarah A. Bethea, Adm'x, et al.*, and *H. C. Fladger et ux.* v. *J. H. Hamer et al.*, were introduced. The testimony shows that Missouri Hamer was four years of age in 1860,* and died before attaining majority, without ever having had a guardian or trustee. John H. Hamer is now the guardian of the infant plaintiff. Edwin A. Bethea, as devisee, went into possession of the lands sought to be sold, about the close of the late war. At the hearing, a motion was made on the part of the defendants to make the other heirs at law of John C. Bethea besides Edwin A., parties to this proceeding. The reasons urged in support of it were that the amount decreed to be paid by J. C. Bethea is a general debt against his estate, and not a claim against one of his devisees on the lands in his possession, and that it is necessary for all the heirs-at-law to be made parties before complete justice can be done. The motion was resisted by the counsel for the plaintiffs.

The record in the case of *J. C. Bethea* v. *Sarah A. Bethea et al.*, proves the liability of J. C. Bethea to the plaintiffs for the share of Missouri Hamer in the amount decreed to be paid by him. It is incumbent on the defendants to show that this debt or liability has been discharged in some way, either by J. C. Bethea, in his lifetime, or by his executors or heirs since his death, in order to preclude the granting of the relief demanded in the complaint.

The first position assumed by the defendants is, that the order of the court affirming the allotment of the lands to J. C. Bethea, and directing the payment of money by him to the distributees of W. S. Bethea, was a conversion of realty into personalty, and the claim was a mere money demand, secured by the judgment for its payment, which was a lien upon and enforcible against all

---

*This is twice stated in the decree. The brief does not give her age. It appears from the order of the court passed in February, 1860, that she was then married. She died under age in 1862.—REPORTER.

the property of J. C. Bethea, and hence the administrators of W. S. Bethea had a right to receive the fund and administer it.

The doctrine of equitable conversion is thus laid down by Sir Thomas Sewell, in *Fletcher* v. *Ashburner*, found in *Lead. Cas. in Eq.*, I., 777 : "That money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted ; and this in whatever manner the direction is given, whether by will, by way of contract, marriage articles, settlement, or otherwise; and whether the money is actually deposited or only covenanted to be paid; whether the land is actually conveyed or only agreed to be conveyed." The direction to convert either money into land or land into money must be express and imperative ; for if the conversion be optional, the property will be considered as real or personal according to the actual condition in which it is to be found.

In the case of *Steele* v. *Prince*, 9 *Monk Eq. R.* 743, it is held: "That if a conversion is rightfully made, whether by the court or a trustee, all the consequences of a conversion must follow."

In this state it has been held that proceeds of land ordered to be sold by a will, are treated as personalty. 8 *Rich. Eq.* 291.

In the case of *Arnold* v. *Dixon*, 19 *Eq.* 113, *Vol. IX.*, *Amer. Law Reg.*, it was decided that in an administration suit wherein partition was asked, a sale was ordered, and after the decree, but before the sale, one of the parties entitled to a share died, that "the real estate had been converted into personal and passed to the personal representative of the deceased beneficiary."

The ground of this doctrine is, as stated in *Story's Eq. Jur.*, § 791, *p.* 175, that it is to be presumed that the parties, in directing money to be invested in land, or land to be turned into money, intend that the property shall assume the very character of the property into which it is to be converted. The lands owned by John C. Bethea and W. S. Bethea, jointly, were partitioned after the death of the latter. His share descended to his heirs-at-law as real estate. His debts were inconsiderable, and there was no necessity for the sale of any of his lands for their payment; when the lands were allotted to J. C. Bethea, and he was decreed to pay the value of the share of W. S. Bethea to his

distributees in money, it was for the purpose of partition, and not for the payment of debts. The money decreed to be paid represented the portion of the lands to which the distributees were entitled. There was no direction of the court for J. C. Bethea to pay to the administrators of W. S. Bethea the amount ordered to be paid for equality of partition. It cannot be successfully contended, then, that the administrators were entitled to receive this fund as the assets of the estate of W. S. Bethea for the payment of debts. If they had a right to receive it, it was only on the ground of a conversion, by the court, of real estate into personalty, to be distributed by them among the parties entitled.

The order of the court directing the payment of money by J. C. Bethea, was express and imperative. The distributees of W. S. Bethea were designated as, the parties to whom it was to be paid. There could be no election to take the fund as land or money, for when an estate is directed to be sold and the money divided among several persons, none has a right to say that any part shall not be sold. The authority of the court to direct a conversion is unquestionable. A conversion, if directed by the court, was rightfully made.

But it appears that, at the time the judgment of the court was made, Missouri Hamer, the mother of the infant plaintiff, and wife of John H. Hamer, was but four years of age. The rule seems to be different when the real estate of an infant is sold: " If the real estate of an infant be sold, the proceeds are to be deemed real estate until he arrives at majority, and descend to his heirs as such. But on an infant arriving at majority, and obtaining possession of the proceeds of real estate sold, such proceeds are to be deemed personal property, and on his death thereafter descend to his personal representatives as such." *Farmer* v. *Marcet*, 11 *N. Y.* 544, and other cases cited in *Monk Eq. R.*, *Vol. IX.*, 743.

There can be no difference in the rule as applied to a case, where the real estate of an infant is allotted in a partition to another and money decreed to be paid to him for equality, and when a sale is directed for the purpose of a partition. It will be seen that, in this case, one of the parties entitled in the par-

tition to a share of the lands was a minor at the time the decree was made against J. C. Bethea; that the amount to which she was entitled was directed to be paid to her as a distributee; and that there was no necessity (or intention on the part of the court) for selling the lands for the payment of debts. Missouri's share in the lands was her own real estate, and having been allotted to another, the proceeds, or equivalent of same in money, must be considered as real estate until she attained majority—and she never arrived at majority—and her share in the amount due by J. C. Bethea was never converted, and her interest should have descended to her heirs-at-law as real estate.

I am of the opinion that the order of the court did not operate as a conversion of real into personal property, so far as Missouri was concerned, and the administrators were not entitled to receive her share as money, either for the purpose of distributing it, or for the payment of any debts of the intestate. The next position of the defendants is, that if the administrators had no right to receive her share as personal property, they clearly had the power to do so by virtue of the order of Chancellor Dunkin, made on February 20th, 1860.

The order was made in the proceeding for the partition and settlement of the estate of W. S. Bethea. In the first clause it directed, " that in respect to the portion of the negroes allotted to the said Missouri, and the proceeds of the land hereafter directed to be sold, it be referred to the commissioners in equity to inquire and report who would be a fit and proper trustee on whom to settle said slaves and proceeds of sales of land to the use of said Missouri."

In the second clause of the order, the lands mentioned in the return of the commissioners appointed to partition the real estate of W. S. Bethea, are directed to be sold.

The last clause of this order directs, " that the share of the negroes and proceeds of sale of lands allotted to Missouri, wife of J. H. Hamer, remain in the administrator's hands until the further order of the court."

This order was made at the same term of the court, and only two days after that, the order was granted allotting the lands to

J. C. Bethea, and directing him to pay so much money to Missouri as one of the distributees of W. S. Bethea.

There can be no question about the power of the administrators, under the order of February 20th, 1860, to receive the proceeds of the sale of the lands therein ordered to be sold to which Missouri was entitled. The Chancellor seems also to sustain the view already presented in the question of conversion, for he directs the proceeds of lands to be held, clearly indicating that it was a direction to secure real estate, and not personalty, by reason of a conversion consequent upon the sale.

Did this order also include the amount ordered to be paid to Missouri by J. C. Bethea?

The terms of the order are general. The administrators are directed to hold the proceeds of sale of land allotted to Missouri. The amount J. C. Bethea was decreed to pay her was proceeds of lands allotted to her. These proceeds were allotted to her by the same Chancellor at the same term of the court, and only two days before. The court was certainly cognizant of this fact, and must have intended that the proceeds as well as all others should be embraced within the terms of the order.

What was the object of this order, in so far as it related to Missouri? Clearly to protect her share in her father's estate from the debts of any future husband. As expressed in the order, the object is to settle her property upon a suitable trustee. If this was the object, why should not her entire property have been thus settled? The court clearly never intended to settle only a part upon a trustee. It does seem that the purpose of the court was to settle all of the property, and if so, then the last clause of the order embraced the amount in controversy. This seems to have been the construction placed upon the order by the then commissioner in equity, for it is in proof that the receipt of the administrators to J. C. Bethea is in his handwriting. J. C. Bethea and the administrators appear to have so understood the order. All parties concerned seem to have acted upon such a construction. The administrators accounted in the settlement of the estate of W. S. Bethea for the fund so received by them.

At the time this order was made no trustee had been appointed for Missouri. This seems to have been the reason for directing

the administrators—one of whom was the mother, and the other the stepfather of Missouri—to hold the property. That the infant was protected by the court in same way when this direction was given, is to be presumed from the fact of the direction itself. The extraordinary prudence and caution of the Chancellor granting this order render its propriety and necessity unquestionable.

If this order was intended to embrace the proceeds of the lands allotted to J. C. Bethea, to which Missouri was entitled, the administrators had the power to receive her share from J. C. Bethea, and to hold it until the further order of the court. That they did so receive her share is incontestably established by the receipt. It is now in their hands, and to them the plaintiffs must look. The fact of the insolvency of the administrators, or their bondsmen, cannot affect the question to be decided in this case. Considering the order of Chancellor Dunkin, and all the peculiar circumstances of this case, it would be a great hardship to require the heirs or devisees of J. C. Bethea to again pay this amount, when it was once paid under what was supposed to be the direction of the court.

It is adjudged, ordered and decreed that the complaint be dismissed.

July 1st, 1876.                C. P. TOWNSEND.

From this decree the plaintiffs appealed to this court, upon the ground that the payment to the administrators of W. S. Bethea could not operate as a satisfaction of the amount J. C. Bethea was ordered to pay to Missouri Hamer, one of the distributees of William S. Bethea, under the order of February 17th, 1860.

*Messrs. Johnson & Johnson,* for appellants.

Upon the position that there was no equitable conversion, they cited 4 *Rich. Eq.* 152 ; 2 *Hill Ch.* 644 ; 2 *Rich. Eq.* 56 ; 1 *Bro. C. C.* 503 ; 2 *N. & McC.* 149 ; 2 *Rich. Eq.* 115 ; 4 *Rich. Eq.* 503 ; 2 *Hill Ch.* 575.

*Messrs. C. A. Woods, Townsend & McKerall,* contra.

Cited 4 *Rich. Eq.* 157, 160, 503 ; *Spears Eq.* 150 ; 2 *Strob. Eq.* 23; *Dud. Eq.* 56 ; *Bail. Eq.* 294 ; 9 *Rich. Eq.* 478 ; *Herm. Est.,* §§ 28, 43, 336.

April 14th, 1879. The opinion of the court was delivered by
WALLACE, A. A. J. In 1857 John C. Bethea and his
brother, William S. Bethea, were the joint owners of three tracts
of land, viz., the Clark land, the Hamilton or Hamner Hays
land, and a tract of land lying on Reedy creek. In March,
1857, W. S. Bethea died intestate, leaving as his heirs-at-law his
widow, Sarah A., and two minor children—a daughter, Missouri,
and a son, W. H. Bethea. The widow administered on the
estate of the intestate, and afterwards intermarried with J. C.
Fladger. The infant daughter intermarried with John H. Ha-
mer, and died before attaining her majority, leaving one child,
Robert M. Hamer. On the 14th of February, 1859, John C.
Bethea filed his bill for the partition of the three tracts of land
jointly owned by himself and W. S. Bethea. On the 18th of
February, 1859, it was, amongst other things, ordered that a
writ of partition should issue. On the 5th of December, 1859,
the writ was issued, and on the 6th of January, 1860, the com-
missioners made their return, setting apart the three tracts to
John C. Bethea, at the valuation of $5151, and recommending
that John C. should pay one-half of this sum, viz., $2575.50,
with interest from the 1st of March, 1860, to the distributees of
W. S. Bethea. This return was confirmed and made the decree
of the court on the 17th of February, 1860. John C. Bethea
subsequently paid this amount to C. J. Fladger and wife, as
administrators of the estate of W. S. Bethea. On the 17th of
December, 1859, C. J. Fladger and wife filed their bill against
J. H. Hamer and wife and W. H. Bethea for the partition of
two tracts of land, of which W. S. Bethea was sole owner in his
lifetime, viz., the Home place and the Herring place, which they
had in possession, and also of the three tracts in which John C.
Bethea had a half interest. On the 17th of February, 1860, the
day on which the commissioners in the case instituted by John
C. Bethea made their return to the writ in that case, a writ of
partition was issued to commissioners to divide the Home place
and the Herring place. A return to this writ was made on the
20th of February, 1860, recommending that the Home place
and the Herring place be sold on sale-day in December, 1860.
On the same day the return was made it was confirmed, except

as to vesting the share of Missouri, wife of John H. Hamer. This action is brought by the representatives of Missouri Hamer, to recover the amount of her share of the $2575.50 ordered by the court to be paid to the heirs of W. S. Bethea by John C. Bethea, and to set up a lien to the extent of Missouri's share of that amount upon the land assigned to John C. Bethea. The defendants set up the payment to C. J. Fladger and wife as a discharge of the debt of John C. Bethea to the heirs of W. S. Bethea, and extinguishment of the statutory lien upon the land. The duty of administrators is to collect and sell, under proper proceedings, the personal estate of their intestates. Primarily they have to do only with the personal estate, and, so far as their powers and duties are concerned, that only is personal estate which has that character impressed upon it at the time of the death of the intestate. Now, when under proceedings in partition the three tracts of land were assigned to John C. Bethea by the court, the title which had vested in the heirs of W. S. Bethea, at his death, was extinguished, and their interest was transferred and attached to the money to be paid. Whether there was any conversion of realty into personalty is a question with which the administrators of W. S. Bethea have no concern. This land was certainly realty at the death of W. S. Bethea, and, as such, they had no authority to administer it. Nor would the order of court, directing the title of the heirs to be extinguished by the payment of money to the heirs, change the relation of the administrators to this part of the estate of their intestate. The question as to a conversion might arise between the personal representatives and the heirs of Missouri Hamer.

It does not appear that there was any insufficiency of personal assets to pay the debts of the intestate. The administrators, therefore, as such, had no power to discharge John C. Bethea from his obligation to pay Missouri Hamer, by receiving the money themselves. It was certainly competent for the court to direct to whom the money should be paid. Did the court direct that this fund be paid to the administrators? In the case instituted by John C. Bethea the court ordered that the sum to be paid by John C. Bethea should be paid to the *heirs* of W. S. Bethea. In the case of Fladger and wife, the court orders: 1st.

"That in respect to the portion of the negroes allotted to the said Missouri, and the proceeds of the land hereafter directed to be sold, it be referred to the commissioner in equity to inquire and report who would be a fit and proper trustee on whom to settle said slaves and proceeds of sales of land to the use of said Missouri." 2d. "That the lands mentioned in the report of the commissioners be sold." 3d. "That the share of the negroes and proceeds of sales of land allotted to Missouri remain in the administrator's hands until the further order of the court." It will be seen that the first clause of the order directs the commissioner in equity to inquire and report a proper trustee to take charge of the negroes allotted to Missouri, and the proceeds of land hereafter directed to be sold. Now, the land immediately thereafter directed to be sold, in the same order, and the only land thereafter directed to be sold, are the Home place and the Herring place. So it was for Missouri's share of the proceeds of these two tracts that the commissioner was to report a trustee; the share of Missouri in the other lands of her father having been covered by a previous order in another case. There is no language in the last clause of the order under consideration that extends its operation beyond the case in which it was made. Construing the whole order together, the first and second clauses designate the property to be settled to the use of Missouri, and the last clause provides for the custody of that property until the settlement could be made. No part of the order authorizes the administrators to receive from John C. Bethea Missouri's share of the money to be paid by him.

The decree of the Circuit judge dismissing the complaint is reversed, and the cause remanded.

Decree reversed.

WILLARD, C. J., and HASKELL, A. J., concurred.